# EXHIBIT B

# PATENT PURCHASE AGREEMENT

This patent purchase agreement (the "Agreement") is entered into as of on October 11, 2023 (the "Effective Date") by and between Verna IP, LLC of New Mexico (the "Seller" or "VernaIP NM") and Verna IP, LLC, a Texas limited liability company (the "Purchaser" or "VernaIP TX") (each a "Party" and collectively the "Parties") to transfer all of VernaIP NM's assets and liabilities to VernaIP TX. The Parties hereby agree as follows:

**1.   BACKGROUND**

1.1.  Seller is the sole and exclusive owner of certain Patents (as defined below).

1.2.  VernaIP NM, LLC's Primary Assets and liabilities are its US patents, associated litigations, both filed and unfiled, and certain fee orders.

- U.S. Patent Nos. 7,596,759; 8,265,938; 8,970,400; 9,883,001; 10,282,960; 10,769,923; 11,403,932; and, any application depending and/or claiming priority therefrom ("Patent Assets");

- The filed and unfiled litigations alleging infringement of the Patent Assets ("Litigation Assets"); and,

- And liabilities of a certain fee award of $48,076.50 ("Fee Award") (collectively, "Primary Assets").

1.1.  Seller wishes to sell to Purchaser all right, title and interest in the Primary Assets and any and all rights associated therewith, including the right to sue for infringement, including past infringement, to maximize the value of the Primary Assets and pay the Fee Award.

1.2.  Purchaser wishes to purchase from Seller all right, title and interest in the Primary Assets, including the Patents and any and all rights associated therewith and thereafter intends to monetize said Patents (including licensing the Patents to third parties) for its and Seller's benefit, including the right to sue for infringement, including past infringement.

1.3.  The Purpose of this Agreement is to transfer all right, title and interest in the Primary Assets and liabilities from VernaIP NM to VernaIP TX.

**2.   DEFINITIONS**

2.1.  "Affiliate" means, with respect to any Person, any Entity in any country that is controlled by or is under common control with such Person. The term "control"

means possession directly or indirectly of the power to direct or cause the direction of the management and policies of an Entity, whether through the ownership of voting securities, by trust, management agreement, contract or otherwise; provided, however, that beneficial ownership of more than fifty percent (50%) of the voting equity interests of an entity shall be deemed to be control.

2.2. "Consideration" means any tangible or intangible property or property right received by Purchaser in exchange, directly or indirectly, for the grant of any right in or license under the Patents, or any forbearance from enforcement of the Patents, said grant or forbearance including, by way of example, without limitation, the sale, exclusive license or non-exclusive license of one or more of the Patents or the grant of a covenant not to sue on one or more of the Patents, said tangible or intangible property including, by way of example, without limitation, cash payments, notes, securities or real or personal property received upon a sale or in payment of royalties, or, grants of rights under patents owned by third parties. If Purchaser receives any Consideration, other than cash, the Parties agree to share same pari passu or determine the value of same so that Seller or Purchaser may be paid or retain their equitable shares of the cash value of said Consideration.

2.3. "Entity" means any corporation, partnership, limited liability company, association, joint stock company, trust, joint venture, unincorporated organization, governmental entity (or any department, agency, or political subdivision thereof) or any other legal entity.

2.4. "Patents" means the Patent Assets

2.5. "Person" means any individual or Entity.

3. **AGREEMENT TO SELL AND PURCHASE THE PATENTS**

3.1. Seller agrees to sell and Purchaser agrees to buy, subject to the conditions set forth below, all right, title and interest in and to the Primary Assets

3.2. Seller agrees to indemnify Purchaser for all obligations, claims or liabilities based on conduct of Seller, its agents or attorneys arising before or after the Effective Date. This indemnification specifically includes any sanction under Rule 11, Sections 285 or 1927, however none are anticipated. This indemnification does not include conduct solely of the Purchaser after the Effective Date.

4. **THE CLOSING**

4.1. Seller assigns all rights, title arising under the Patent Assets to Purchaser, as

2

defined.

4.2. The Parties agree that the representations and warranties contained in this Agreement shall be true at and as of the Closing, as if the date of the Closing was substituted for the date of such representations and warranties. A date for said Closing shall be set the same as the Effective Date.

4.3. The Parties agree that all corporate and other proceedings in connection with the transactions contemplated by this Agreement shall have been performed by them and that all documents and instruments incident to such transactions and reasonably requested shall be reasonably satisfactory in substance and form to their respective counsel, shall have been executed and Purchaser and the Parties and their counsel shall have received counterpart originals or certified or other copies of such documents and instruments as their counsel may reasonably request.

4.4. Further Cooperation. At the reasonable request of Purchaser, Seller will execute and deliver such other instruments and do and perform such other acts and things as may be necessary or desirable for effecting completely the consummation of the transactions contemplated hereby, provided that such acts and things do not impose any unreasonable cost or liability on the Seller, including execution, acknowledgment and recordation of other such papers for fully perfecting and conveying unto Purchaser the benefit of the transactions contemplated hereby.

## 5. THE PURCHASE PRICE

5.1. The Purchase Price is assumption of the liability of $48,076.50 and for other good and valuable consideration, the receipt of which is acknowledged.

## 6. OBLIGATIONS OF SELLER AND PURCHASER AFTER THE CLOSING

6.1. There are not further obligations between the parties other than those agreed to herein.

## 7. REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants to Purchaser as follows that, as of the Effective Date and as of the date of the Closing:

7.1. Authority. Seller has the full power and authority, and has obtained all third party consents, approvals or other authorizations required, to enter into this Agreement and to carry out its obligations hereunder, including, without limitation, the

3

assignment of the Patents to Purchaser. The execution and delivery of this Agreement and the related transaction documents and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all necessary corporate actions on the part of Seller. This Agreement and the other transaction documents have been duly executed and delivered by Seller, and constitute legal, valid and binding obligations of Seller, enforceable in accordance with their terms.

7.2. Non-Contravention. Seller's execution, delivery, and performance of its obligations under this Agreement will not conflict with or violate the corporate documents of Seller or any laws to which Seller is subject, or any agreement or other obligation of Seller or binding upon Seller's assets or result in the creation or imposition of any mortgage, lien, charge, pledge, security interest, other encumbrance or third party right upon any of the Patents.

7.3. Title and Contest. Seller owns all right, title, and interest in the Patents, including all right, title, and interest to sue for infringement of the Patents and all attorney client privileges. The identity of all inventors of the inventions claimed in the Patents has been fully disclosed to the U.S. Patent and Trademark Office ("USPTO") as required by U.S. law. The Patents are free and clear of all liens, claims, mortgages and security interest. There are no actions, suits, investigations, claims or proceedings threatened, pending or in progress relating in any way to the Patents. With the exception of the Fee Awards, Seller is not obligated or under any liability whatsoever to make any payments by way of royalties, fees or otherwise to any owner or licensee of, or other claimant with respect to the use of any of the Patents or subject matter disclosed and claimed in the Patents or in connection with the licensing or sale of any of the Patents to third parties.

7.4. No Joint Development Activity. No Patent (i) is the product or subject of any joint development activity or agreement with any third party; (ii) is the subject of any consortia agreement; or (iii) has been financed in whole or in part by any third party.

7.5. Terminal Disclaimers. Terminal disclaimers exist.

7.6. Pending United States Applications. Applications as provided.

7.7. USPTO Proceedings. None.

7.8. Validity and Enforceability. To Seller's knowledge, the Patents have never been found invalid or unenforceable for any reason in any administrative, arbitration, judicial or other proceeding, and there are no

4

proceedings or actions before any governmental entity (including the USPTO or equivalent authority anywhere in the world) in which claims are or were raised relating to the validity, enforceability, scope, ownership or infringement of any of the Patents. Seller does not know of and has not received any notice or information of any kind from any source suggesting that the Patents may be invalid or unenforceable.

7.9. <u>Compliance with Applicable Law.</u> The Patents are currently in compliance with all legal requirements (including payment of filing, examination and maintenance fees and the filing of any necessary oaths, proofs of use or other documents) for maintaining, registering, filing, certifying or otherwise perfecting or recording such Patents.

**8.  REPRESENTATIONS AND WARRANTIES OF PURCHASER**

Purchaser hereby represents and warrants to Seller as follows that, as of the Effective Date and as of the date of the Closing:

8.1. Purchaser is a limited liability corporation under Texas law.

8.2. Purchaser has the full power and authority, and has obtained all third party consents, approvals or other authorizations required, to enter into this Agreement and to carry out its obligations hereunder. The execution and delivery of this Agreement and the related transaction documents and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all necessary corporate actions on the part of Purchaser. This Agreement and the other transaction documents have been duly executed and delivered by Purchaser, and constitute legal, valid and binding obligations of Purchaser, enforceable in accordance with their terms.

8.3. Purchaser's execution, delivery, and performance of its obligations under this Agreement will not conflict with or violate any laws to which Purchaser is subject, or any agreement or other obligation directly or indirectly applicable to Purchaser or binding upon Purchaser's assets.

8.4. Purchaser represents and warrants that it has or can obtain the funds and resources to vigorously enforce the Patents, subject to its reasonable discretion, against any and all infringers thereof. Neither party is obligated to continue paying maintenance fees for any of the patent assets.

8.5. Purchaser is purchasing the Patents for its own account and benefit, and not as an agent or representative of any other person or Entity.

9.  **TERMINATION**

9.1. <u>Both Parties' Right to Terminate for Breach of a Material Provision of this Agreement.</u> Either party may terminate this Agreement upon sixty (60) days' written notice to the other Party citing a breach of a material provision of this Agreement, provided the breach remains uncured at the end of such period. This Agreement shall terminate on the expiration of said sixty (60) day period unless the Party in breach cures the alleged breach. Seller agrees that its only remedies for any breach by Purchaser is limited to re-assignment of the patent assets to Purchaser.

10. **MISCELLANEOUS**

10.1. <u>Compliance With Laws.</u> Notwithstanding anything contained in this Agreement to the contrary, the obligations of the Parties will be subject to all laws, present and future, of any government having jurisdiction over the Parties and this transaction, and to orders, regulations, directions or requests of any such government.

10.2. <u>Confidentiality of Terms.</u> The Parties will keep the terms and existence of this Agreement and the identities of the Parties and their Affiliates confidential and will not now or hereafter divulge any of this information to any third party except as follows: (a) with the prior written consent of the other Party; (b) subject to obligations of confidentiality and/or privilege at least as stringent as those contained herein, to a Party's legal and financial counsel and other professional advisors, in their capacity of advising a Party in such matters; (c) subject to obligations of confidentiality and/or privilege at least as stringent as those contained herein, to a counterparty engaged in due diligence in connection with a proposed merger, acquisition, reorganization, or financing of all or substantially of a Party's assets or equity or in connection with a proposed sale or exclusive license of the Patents, as applicable; (d) by Purchaser, in order to perfect Purchaser's interest in the Patents with any governmental patent office (including, without limitation, recording the executed Assignment in any governmental patent office); (e) to enforce Purchaser's right, title and interest in and to the Patents; (f) to any governmental body having jurisdiction and specifically requiring such disclosure; or (g) as required during the course of litigation and subject to a protective order with a confidentiality designation of "Outside Attorneys' Eyes Only" or higher; provided that, in (f) and (g) above, (i) the disclosing party will use all legitimate and legal means available to minimize the disclosure to third parties, including, without limitation, seeking

a confidential treatment request or protective order whenever appropriate or available; and (ii) the disclosing Party will provide the other Party with at least ten (10) days' prior written notice of such disclosure.

10.3. <u>Governing Law: Forum.</u> This Agreement, its performance and interpretation shall be governed by the substantive law of the State of Texas, exclusive of its choice of law rules. The courts and tribunals situated in Harris County, Texas shall have sole and exclusive jurisdiction of any dispute or controversy arising out of or relating to this Agreement.

10.4. <u>Relationship of Parties</u>. The Parties are independent contractors and not partners, joint venturers, or agents of the other. Neither Party assumes any liability of or has any authority to bind, or control the activities of, the other.

10.5. <u>Severability.</u> If any provision of this Agreement is found to be invalid or unenforceable, then the remainder of this Agreement will have full force and effect, and the invalid provision will be modified, or partially enforced, to the maximum extent permitted to effectuate its original objective.

10.6. <u>Waiver.</u> Failure by either Party to enforce any term of this Agreement will not be deemed a waiver of future enforcement of that or any other term in this Agreement or any other agreement that may be in place between the Parties.

10.7. <u>Miscellaneous</u>. This Agreement, including its exhibits, constitutes the entire agreement between the Parties with respect to the subject matter hereof, and merges and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions. Neither of the Parties will be bound by any conditions, definitions, warranties, obligations (including obligations to prosecute any of the Patents), understandings, or representations with respect to the subject matter hereof other than as expressly provided herein. The section headings contained in this Agreement are for reference purposes only and will not affect in any way the meaning or interpretation of this Agreement. No oral explanation or oral information by either Party hereto will alter the meaning or interpretation of this Agreement. No amendments or modifications will be effective unless in writing and signed by authorized representatives of both Parties. The Exhibits referenced herein and attached hereto are incorporated into this Agreement as though fully set forth herein.

10.8. <u>Counterparts;</u> <u>Electronic Signature.</u>  This Agreement may be executed in counterparts, each of which will be deemed an original, and all of which together constitute one and the same instrument.  Each Party will execute and deliver to the other Party a copy of this Agreement bearing its original signature.  Prior to such execution and delivery, in order to expedite the process of entering into this Agreement, the Parties acknowledge that Transmitted Copies of this Agreement will be deemed original documents. ***"Transmitted Copies"*** means copies that are reproduced or transmitted via email of a .pdf file, photocopy, facsimile or other process of complete and accurate reproduction and transmission.

In witness whereof, the Parties have caused this Patent Purchase Agreement to be executed as of the Effective Date by their respective duly authorized representatives. We have read and confirm the provisions of this Patent Purchase Agreement.

**Verna IP, LLC of New Mexico**                  **Verna IP, LLC of Texas**

**By** _/s/ Luis Ortiz_                          **By** _/s/ Luis Ortiz_

Name: **Luis Ortiz**                             Name: **Luis Ortiz**

Position: **Member/Manager**                     Position: **Member/Manager**

Date: **October 11, 2023**                       Date **October 11, 2023**

**Verna IP, LLC of New Mexico**                  **Verna IP, LLC of Texas**

**By** _/s/ Kermit D. Lopez_                     **By** _/s/ Kermit D. Lopez_

Name: **Kermit Loez**                            Name: **Kermit Lopez**

Position: **Member/Manager**                     Position: **Member/Manager**

Date: **October 11, 2023**                       Date **October 11, 2023**